UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FAIRMOUNT HEIGHTS ASSOCIATES, :
L.P., :
　　　　　　　　　　　　　　　　　:
　　Plaintiff, :
　　　　　　　　　　　　　　　　　:
　　　　v. : No. 3:06cv1206 (WWE)
　　　　　　　　　　　　　　　　　:
GREYSTONE SERVICING CORP., :
　　　　　　　　　　　　　　　　　:
　　Defendant. :

## Ruling on Motion for Summary Judgment

This case concerns a contract between Fairmount Heights Associates and Greystone Servicing Corporation for servicing a Department of Housing and Urban Development ("HUD") insured mortgage and for managing three escrow accounts. Defendant claims that the complaint alleges breach of fiduciary duty and breach of the Connecticut Unfair Trade Practices Act. The Court construes the complaint to allege that defendant: 1) violated its contractual responsibilities to plaintiff and HUD's rules and regulations (count one); 2) damaged plaintiff by fraudulent, intentional and deliberate malfeasance (count two);[1] 3) violated its fiduciary duties to plaintiff (count three); and 4) violated the Connecticut Unfair Trade Practices Act ("CUTPA") (count four). Defendant filed a motion to dismiss, arguing that it did not owe a duty to plaintiff to invest the escrow funds as asserted.

---

[1]This claim is construed to be one of deliberate or willful breach of defendant's fiduciary or contractual duty.

On June 25, 2007, this Court gave the parties notice that it would convert the motion to dismiss into one for summary judgment so that it could consider evidence relevant to plaintiff's breach of contract claim. For the following reasons, the Court will now grant the motion for summary judgment.

## FACTUAL BACKGROUND

For purposes of this ruling, the Court must rely on the contract submitted and the facts stated in the complaint.

On December 1, 2004, plaintiff closed on a mortgage from defendant for a low income housing complex.

As part of the mortgage agreement and in accordance with the rules and regulations of HUD, plaintiff established three escrow accounts with defendant. Account 1 is an escrow Reserve for Replacement account. Account 2 is an escrow account for Taxes, Property Insurance and Mortgage Insurance. Account 3 is an escrow account to provide funds for improvements to the property.[2]

Although the mortgage was then immediately sold to Fannie Mae and then resold to other investors, defendant retained the servicing of the mortgage and management of the escrow accounts. Pursuant to a contract, plaintiff paid defendant $12,000 to manage the escrow accounts.

Plaintiff has submitted a copy of the Rehabilitation Escrow Deposit Agreement ("Agreement"), which provides in paragraph 4, entitled "Escrow Administrator and Escrow Account":

---

[2] Since the improvements have been made, account 3 now has a zero balance.

A. **Escrow Administrator.** The Escrow Administrator shall administer, in accordance with the Agreement, the deposits described pursuant to the Agreement (the "Funds"). The Escrow Administrator may not delegate or assign any of its duties under the Agreement to any third party other than as provided herein with respect to the Engineer, except with the advance written permission of the Deputy Assistant Secretary.
B. **Escrow Account.** The Funds shall be held in an escrow account (the "Escrow Account") as provided herein.
C. **Management of Funds.** The Escrow Administrator shall, in accordance with this Agreement, hold, invest and disburse the Funds. The Escrow Administrator agrees that pending disbursements, the Funds shall be invested solely in obligations of, or fully guaranteed as to principal by, the United States of America. Any and all interest earned on the Funds shall be added to the Funds and held in the Escrow Account. The Owner shall provide its tax identification number to the PAE [Participating Administrative Entity] and Escrow Administrator, and so long as no Event of Default has occurred, the Owner shall be considered to be the recipient of any interest earned on the Funds.
D. **Secretary's Security Interest.** To secure the Owner's obligations under this Agreement, the Owner hereby grants a security interest in the Funds to the Secretary. To perfect such security interest, the Escrow Account shall be titled in the name of the Secretary.

In paragraph 13, the Agreement provides:

**Obligations and Liability of Escrow Administrator.** The Escrow Administrator shall not be required to take any action hereunder without compensation or indemnity provided with respect to such action. The Escrow Administrator shall be entitled to request the advice of the PAE, and/or Deputy Assistant Secretary/Secretary, with respect to any matter or issue arising hereunder concerning which the Escrow Administrator is required to make final determination and the Escrow Administrator shall not be required to take any action hereunder before receiving such advice in writing. The Escrow Administrator shall be entitled to rely on the authenticity, truth and accuracy of all documents transmitted to it in connection with the performance of its duties hereunder and shall not be required to undertake any independent due diligence to determine such authenticity, truth or accuracy. The Escrow Administrator shall have no liability for the performance of its duties hereunder except with regard to its own negligence or default. The Director and Secretary may require the Escrow Administrator to give a periodic accounting of the escrow deposits, withdrawals, expenses and interest.

Paragraph 16 provides:

**Controlling Provisions.** This Agreement shall be governed by all applicable federal laws, the laws of the state in which the Project is located, and all applicable regulations. In the event of a conflict between the terms and conditions of this Agreement and applicable law or regulations, the applicable law or regulations shall control.

Plaintiff asserts that defendant placed monies in the three accounts at a low interest rate of .25%. In August 2005, plaintiff instructed defendant to invest the monies of Account 1 in a six month United States Treasury Note paying a higher interest rate. Plaintiff asserts that defendant invested a substantial portion of the funds of Account 1 in a U.S. Treasury Note, but the balance remained invested at a rate of .25% per annum rather than in a money market account. Defendant also charged plaintiff a $150 fee for investing in the Treasury Note. Plaintiff alleges that it also requested defendant to invest the remaining funds in all three accounts in money market accounts, but that defendant failed to follow this directive.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Plaintiff alleges that defendant breached its fiduciary duties pursuant to HUD regulations and its contractual duties by investing the funds at bank teller rates of .25% per year, by charging certain fees, not consulting with plaintiff concerning the investment of escrow monies, and by refusing to comply with plaintiff's directives concerning investment of the monies. Defendant posits that plaintiff's claims fail as a matter of law because plaintiff cannot establish that defendant was under any legal or contractual obligation to invest or pay interest on the funds at a "reasonable" rate or to follow the directives of the HUD handbook.

In its opening brief, defendant argues that neither Connecticut statutory nor common law imposes a fiduciary duty upon defendant by plaintiff. Connecticut decisional law has not yet held that a cause of action for breach of fiduciary duty may be instituted against an escrow holder/agent. See Ravenswood Construction, LLC v.

5

Bysiewicz, 2006 WL 1681027 (Conn. Super.)  Plaintiff makes no attempt to establish that state common law imposes a fiduciary duty upon defendant, and the Court considers such a claim to be abandoned.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."  Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003).   Instead, plaintiff asserts that defendant breached its duties imposed by contract and the HUD Handbook 4350.1 Rev. 1.

It is well established that the HUD Handbook is advisory and, therefore, its provisions do not have the force of law and cannot be the basis of action for damages. Burroughs v. Hills, 741 F.2d 1525, 1529 (7th Cir. 1984), cert. denied, 471 U.S. 1099 (1985) (courts have rejected efforts to find an implied cause of action pursuant to HUD handbook).   Thus the Court finds that plaintiff's claims based on defendant's alleged breach of fiduciary duty are unsupported by federal or state statute or common law.

The Court now turns to determine if the contract imposes the duties alleged to have been breached by defendant.  A contract must be viewed in its entirety, and every provision must be given effect if it is possible to do so.  United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002).  In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract."  Wolosoff v. Wolosoff, 91 Conn.App. 374, 381 (Conn.App. 2005).  Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms.  Breiter v. Breiter, 80 Conn.App. 332, 336 (2003).  A contract is

6

unambiguous when its language is clear and conveys a definite and precise intent. Canterbury Heights Condominium, Inc. v. Local Land Dev. LLC, 272 Conn. 724, 735 (2005).

      Thorough examination of the contract, particularly paragraphs 4 and 13, reveals that the unambiguous terms of the contract do provide that defendant was obligated to hold the funds in an escrow account, that all interest should be added to the funds and held in the escrow account, and that the Escrow Administrator should have no liability except with regard to its own negligence or default. No term imposes a duty to invest the funds at a certain or "reasonable" interest rate; nor does it incorporate HUD handbook provisions as mandatory directives. Accordingly, the Court finds that defendant has not breached a contractual duty as asserted by plaintiff.

      Without a legal duty imposed upon defendant by statute, common law or contract, plaintiff's contractual, malfeasance, breach of fiduciary duty and CUTPA claims must fail. See Associates v. Peterken, 269 Conn. 716, 723 (2004) (breach of fiduciary duty claim requires that defendant owed duty to plaintiff); Glazer v. Dress Barn, Inc., 274 Conn. 33, 83-84 (2005) (no CUTPA violation where defendant was not under a statutory or contractual duty).

## **CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment [#13] is GRANTED.  The clerk is instructed to close this case.


DATED this 29th day of August, 2007 at Bridgeport, Connecticut.


_____/s/_____

WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE