UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAIRMOUNT HEIGHTS ASSOCIATES, L.P., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:06cv1206 (WWE) |
| | : |
| GREYSTONE SERVICING CORP., | : |
| | : |
| Defendant. | : |

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

This case concerns a contract between Fairmount Heights Associates and Greystone Servicing Corporation for servicing a United States Department of Housing and Urban Development ("HUD") insured mortgage and an escrow account. The complaint alleges breach of contract, breach of fiduciary duty, violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and fraud. Defendant has moved for summary judgment. For the following reasons, the motion for summary judgment will be granted.

## BACKGROUND

The parties have submitted statements of facts with accompanying exhibits and affidavits that reveal the following factual background.

Plaintiff Fairmount Heights is the owner of certain real property in Waterbury, Connecticut, which is the site of an apartment complex known as the Country Village Apartments ("Apartments"). All but three units in the Apartments are rented to tenants

1

who qualify for HUD Section 8 housing.

In 2004, Fairmount Heights refinanced its existing HUD-insured mortgage loan through the HUD Mark-to-Market Program.  The refinancing conformed with the provisions of the restructuring commitment issued by HUD to Fairmount Heights.  The Mark-to-Market program reduces rents to market levels and restructures existing debt to a level that the rents and other income can support.

As part of the refinancing, Greystone provided Fairmount Heights a new HUD-insured first mortgage loan secured by a first mortgage lien on the Apartments in the principal amount of $5,484,000, retiring an initial mortgage debt on the Apartments.  The promissory note on this loan had a term of 29 years and an interest rate of 5.5% per annum.

HUD also provided a second mortgage to Fairmount Heights in the principal amount of approximately $8 million to retire the remaining portion of the initial debt on the Apartments.

Lawrence Cavanaugh, the managing member of Fairmount Heights' general partner, 283 Colonial, LLC, negotiated and executed the mortgage loan documents for the Mark-to-Market loans on behalf of Fairmount Heights.  Lisa Anderson, a Vice President for Greystone, executed the mortgage loan documents on behalf of Greystone.  The Mark-to-Market financing closed on November 29, 2008, although Anderson was not present at the closing.[1]

---

[1]After the closing, the Greystone Mark-to-Market loan was used to back a Government National Mortgage Association ("GNMA") mortgage-backed security.

The loan documents for the Greystone Mark-to-Market loan include an agreement known as the Rehabilitation Escrow Deposit Agreement ("REDA"). The REDA governs one of the escrow accounts that was funded at the closing and was established to fund certain repair and improvements to the Apartments. Prior to the closing, the parties did not negotiate the terms of the rehabilitation escrow account.

The initial deposit to the rehabilitation escrow totaled $2,199,319.87, which Greystone deposited into a Washington Mutual Bank money market account that Greystone had previously established.

Greystone and Washington Mutual had entered into an agreement that is referred to as a compensating balance arrangement ("Deposit Agreement") in 2001. Under the Deposit Agreement, Greystone agreed to keep a minimum of $85 million on deposit with Washington Mutual as a compensating balance for Greystone's own loans from Washington Mutual. Pursuant to a formula set forth by the Deposit Agreement, Washington Mutual paid an amount monthly to Greystone that was calculated, in part, on the total amount of funds Greystone had on deposit with Washington Mutual. Washington Mutual only paid the amount when each of the following occurred during a month: (1) Greystone maintained average monthly deposits at Washington Mutual in excess of $85 million; (2) Greystone's deposits exceeded the principal amount it owed Washington Mutual under a separate loan agreement; and (3) the calculation did not yield a negative figure. Washington Mutual paid the amount into a Greystone demand deposit account. No part of the amount Washington Mutual paid to Greystone was deposited into the Fairmount Heights rehabilitation escrow.

At all times relevant to this action, Greystone maintained well in excess of $85 million on deposit at Washington Mutual. Thus, Greystone's ability to receive a payment from Washington Mutual based on the amounts on deposit was not dependant upon the funds in the Fairmount Heights rehabilitation escrow.

On January 28, 2005, Greystone sent Fairmount Heights a letter disclosing that the interest paid on the rehabilitation escrow was at money market rates as published in the BankRate Monitor. Fairmount Heights did not respond or raise any objection to this letter or this interest rate until late summer of 2005, when it indicated that it was dissatisfied with the interest rate credited to the rehabilitation escrow and requested that the funds be placed in an interest-bearing account. Greystone did not accommodate this request.

Fairmount Heights made periodic draws from the rehabilitation escrow until it completed the repairs and improvements required by the terms of the REDA. In November 2005, after completion of the repairs and improvements, the balance of the rehabilitation escrow was forwarded to HUD to be applied against the HUD Mark-to-Market loan.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material

factual issue genuinely in dispute.  American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

Breach of Contract

Plaintiff asserts that defendant breached the REDA by failing to afford the escrow account all the money earned by the funds in the account.  Defendant counters that it did not breach the plain language of the contract because defendant paid plaintiff interest in accordance with the contract, and that the amount received from Washington Mutual constituted a "fee" based on deposits that defendant had made pursuant to the Deposit Agreement with Washington Mutual.

The REDA provided:

> **Management of Funds.**  The Escrow Administrator shall, in accordance with this Agreement, hold, invest and disburse the Funds.  The ESCROW Administrator agrees that pending disbursements, the Funds shall be invested solely in obligations of, or fully guaranteed as to principal by, the United States of America.  Any and all interest earned on the Funds shall be added to the Funds and held in the Escrow Account.

Meanwhile, the Washington Mutual Deposit Agreement provided:

> Depositor shall maintain at [Washington Mutual] a separate demand deposit account into which [Washington Mutual] shall credit each month's

> Fee, as calculated pursuant to paragraph 3. The Fee shall be credited to such account on or about the 15th day of the month following the month for which the Fee is calculated. Notwithstanding anything herein to the contrary, the Fee shall only be payable to Depositor on Deposit Balances in excess of all Loan Amount under the Credit Agreement so long as Depositor maintains on deposit with [Washington Mutual] the Committed Deposit Balances.

A contract must be viewed in its entirety, and every provision must be given effect if it is possible to do so. United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002). In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Wolosoff v. Wolosoff, 91 Conn. App. 374, 381 (2005). Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms. Breiter v. Breiter, 80 Conn. App. 332, 336 (2003). A contract is unambiguous when its language is clear and conveys a definite and precise intent. Canterbury Heights Condominium, Inc. v. Local Land Dev. LLC, 272 Conn. 724, 735 (2005). "A contract term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument . . . ." Heyman v. CVS, Inc., 178 Conn. 215, 227 (1979). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Barnard v. Barnard, 214 Conn. 99, 110 (1990).

A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. Levine v. Massey, 232 Conn. 272, 278-279 (1995).

The ambiguity "must emanate from the language used" by the parties. <u>United Illuminating Co.</u>, 259 Conn. at 671.  If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.  <u>Lopinto v. Haines</u>, 185 Conn. 527, 538 (1981).   The question of whether a contractual provision is ambiguous presents a question of law.  <u>LMK Enterprises, Inc. v. Sun Oil Co.</u>, 86 Conn. App. 302, 306 (2004).  Where a contract term is found to be ambiguous, the court may properly discern the intent of the contract through consideration of extrinsic evidence.  <u>See</u> <u>United Illuminating Co.</u>, 259 Conn. at 675.

      The REDA contract does not require that the escrow funds be invested at a specific rate of interest.  It is undisputed that defendant paid interest on the escrow account funds at a BankRate Monitor rate that it had disclosed to plaintiff.  However, plaintiff maintains that defendant should have deposited into the REDA escrow account a pro rata share of the amount paid by Washington Mutual.  Thus, the Court must determine whether the amount paid by Washington Mutual may properly be considered a "fee" rather than interest earned.

      Interest in the financial sense is defined as "a charge for borrowed money generally a percentage of the amount borrowed." <u>Webster's Ninth New Collegiate Dictionary</u> (1987).  A fee is defined as "a fixed charge" and "a charge for a professional service." <u>Id.</u>

      In this instance, the amount Washington Mutual paid to defendant fits within the definition of a fee rather than that of interest.  It represented a payment to defendant for defendant's banking business, namely maintaining deposits in excess of $85 million at Washington Mutual.  Further, the payment was not based on a percentage of the

escrow funds. The Court finds that the plain language of the contractual terms demonstrates that the amount paid by Washington Mutual was a fee rather than interest. Thus, plaintiff was not entitled by contract to a pro rata share of that fee.[2]

<ins>Breach of Fiduciary Duty</ins>

Plaintiff alleges that defendant's failure to pay the pro rata share of the Washington Mutual payment represents a breach of fiduciary duty. Because the Court has not found any breach of contractual duties, the Court will grant summary judgment on the breach of fiduciary duty based on the same factual predicate. <ins>See</ins> <ins>Ravenswood Constr. Co. v. Bysiewicz</ins>, 2006 WL 1681027 (Conn. Super.) (escrow agent duty is limited by terms of escrow agreement).

<ins>CUTPA</ins>

Plaintiff asserts that it was deceptive for defendant to place the escrow funds in a non-interest bearing account without paying the pro rata share of the Washington Mutual payment.

The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral,

---

[2] The fact that the word "interest" was used on a spread sheet created after the commencement of this litigation to calculate plaintiff's claimed pro rata share does not alter the fact that the Washington Mutual's payment constituted a fee rather than interest.

unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree. Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).

No evidence suggests such that defendant acted in a deceptive manner. Consistent with the previous discussion, defendant did not breach its contractual duties. Defendant paid interest to plaintiff on the escrow funds at a rate that it disclosed to plaintiff. Accordingly, the Court will grant summary judgment on the CUTPA claim.

Fraud

Plaintiff alleges that defendant fraudulently induced plaintiff to close the loan based on representations that it would invest the rehabilitation escrow funds. No evidence supports such an assertion. In fact, Cavanaugh stated in his deposition that the rehabilitation escrow account was not considered during the negotiations. Summary judgment will be granted on this claim.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment [doc. #84] is GRANTED.   The clerk is instructed to close this case.

DATED this 18th day of November, 2009 at Bridgeport, Connecticut.

_____/s/_____

WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE